## West Chicago St. R. R. Co. v. Fannie Lieserowitz.

1. CREDIBILITY OF WITNESSES—*Opportunities of the Trial and Appellate Courts.*—Where the jury and the trial court see and hear the witnesses as well as the parties testify, and observe their appearance and demeanor upon the witness stand, they are in a much better position to determine their credibility than the Appellate Court is, by reading their evidence as it appears in the record.

2. INSTRUCTIONS—*Not Open to the Criticism of Telling the Jury to Disregard the Number of Witnesses.*—An instruction in a case for personal injuries which tells the jury that when the court speaks of the preponderance of the evidence, such preponderance may not be entirely determined by the number of witnesses testifying to a particular fact or facts, and in determining upon which side the preponderance of the evidence is, the jury should take into consideration the opportunities of the several witnesses for seeing and knowing the things about which they testify, their conduct and demeanor while testifying, their interest or lack of interest, if any, in the result of the suit, the probability or improbability of the truth of their several statements, in view of all the other evidence, facts and circumstances proved on the trial, if any, and from all these circumstances the jury may determine upon which side is the preponderance of the evidence, is not open to the criticism of telling the jury to disregard the number of witnesses in determining the point as to the preponderance of the evidence.

3. SAME—*Not Error to Refuse an Instruction When Covered by Others in the Same Case.*—It is not error to refuse an instruction, the substance of which is substantially covered by other instructions given in the same case.

4. SAME—*Where Argumentative, Properly Refused.*—On the trial of an action for negligence resulting in personal injuries, an instruction which impliedly requires the plaintiff to prove all the allegations in

his declaration before he can recover, and is argumentative, is properly refused.

5.  DAMAGES—*Where $4,250 is Not Excessive.*—A young woman under age was seriously injured by a fall in attempting to alight from a street car. and in consequence of her injuries she remained in bed for six or seven months. Prior to the accident she was in good health, but subsequently, and up to the time of the trial, which occurred nearly eight years afterward, her health was poor. A physician who treated her for her injury from about the time of its occurrence, for six or seven months, testified that she was suffering from nervous prostration traceable to her fall. *It was held* that a judgment for $4,250 was not excessive.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the March term, 1901. Affirmed. Opinion filed January 30, 1902.

Statement by the Court.—February 6, 1893, appellee, a minor, by her next friend, began suit against appellant to recover for injuries claimed to have been caused by its negligence. The case has been heard four times, and an appeal from the judgment on the third hearing was before this court (80 Ill. App. 248), where will be found a statement of the declaration and the proceedings had upon the first three hearings. On that appeal a judgment in favor of the railroad company was reversed and the cause remanded by reason of an erroneous instruction.

Upon the last hearing before the Superior Court and a jury, the appellee, having attained her majority, recovered a verdict of $4,250 and judgment thereon, which is sought by the railroad company to be reviewed on this appeal.

On the hearing the court gave, on behalf of the appellee, with another instruction, the following:

"1. The court instructs the jury that the plaintiff's claim, as stated in the declaration, is that while she was a passenger on a street car of the defendant company she was, with due care and diligence, attempting to alight therefrom at the intersection of State street with Randolph, after notice to the conductor of the car; and that the company, by its servants on the car, negligently failed to stop the car a sufficient length of time to allow the plaintiff to leave the car, but caused the car to be suddenly started, and that by reason thereof the plaintiff was thrown from off the car upon the ground and was thereby injured about her

back, womb, and divers other parts of the body; that she became sick and sore and permanently injured, and that she has suffered great pain.

" The court instructs the jury that it was the duty of the company to carry plaintiff as a passenger to her place of destination, and to permit her to alight from the car, giving her reasonable time to do so, when requested. So, if the jury believe from the evidence that the plaintiff was with due care and diligence, as a passenger, trying to leave the car at the intersection of State street with Randolph street, after notice to the conductor, and that the company, by its servants, negligently failed to stop the car a sufficient length of time to allow the plaintiff to alight therefrom, but caused said car to be suddenly started, and that by reason thereof plaintiff, without fault on her part, was thrown off said car upon the ground, and was thereby injured, then the jury should find the defendant guilty, and assess the plaintiff's damages as such damages may appear from the evidence.

" 2.   The jury are instructed that when the court speaks of the preponderance of the evidence, in these instructions, such preponderance may not be entirely determined by the number of witnesses testifying to a particular fact or facts. In determining upon which side the preponderance of the evidence is, the jury should take into consideration the opportunities of the several witnesses for seeing and knowing the things about which they testify; their conduct and demeanor while testifying; their interest or lack of interest, if any, in the result of the suit; the probability or improbability of the truth of their several statements, in view of all the other evidence, facts and circumstances proved on the trial, if any; and from all these circumstances the jury may determine upon which side is the preponderance of the evidence.

" 3.   Although the jury may believe from the evidence that the testimony of the plaintiff on the former trial of this cause was in some respects different from the testimony now given by her on this trial, this, standing by itself, would not warrant the jury to disbelieve the plaintiff's testimony, if the jury believe from the evidence that upon the former trial, for some reason appearing from the evidence, plaintiff was mistaken, and if on this trial she is telling the truth; for it is the law that the party's testimony is not to be disregarded simply by making a mistake in the evidence, if such appears to be so from the evidence.   The

credibility of the plaintiff as a witness, like the credibility of every other witness in the case, is to be judged by the jury from all the facts and circumstances in evidence, and by all the other tests mentioned in these instructions. ·

"4.   The court further instructs the jury that where witnesses testify directly opposite to each other on a material point, the jury are not bound to consider the point not proved.   The jury has a right to and may regard all surrounding circumstances proved on the trial, and give credence to one witness over the other, if the jury think such facts and circumstances warrant it.   So, in this case, although the plaintiff, upon the question whether she fell from the car on the street, may testify one way, and the conductor and policeman may swear the other way, the jury are not bound to consider the point not proven.   The jury may give credence to the plaintiff upon this point, if the jury believe the facts and circumstances bearing on the point in evidence warrant their doing so."

On behalf of appellant the court gave eighteen instructions and refused, among others, the following:

"27.   The burden of proof is not on the defendant to show how the plaintiff came to fall.   If the preponderance of the evidence does not show that she fell by reason of the car being suddenly started, your verdict should be not guilty.

"28.   The court instructs the jury that you are not required to believe any statement to be a fact simply because any witness or witnesses has or have sworn it to be a fact, if you believe from the evidence that any witness or witnesses has or have willfully and knowingly sworn falsely to such alleged fact, even if such witness or witnesses be not directly contradicted with respect to such matter by some other testimony.   In considering this case and in passing upon your verdict you are not required to set aside your own common observation and experience as men in the affairs of life, but, on the other hand, you have the right, in considering the testimony of this case, to call to your aid your own common observation and experience as men in the affairs of life, and you have the right, upon consideration of all the evidence in this case, in the light of your own common observation and experience as men in the affairs of life, to say where the truth lies upon any material fact in the case.   If after such consideration of all the evidence, in the light of your own common observation and experience as men in the affairs of life, you are unable to say that

the plaintiff has proved the allegations of her declaration by a preponderance of the evidence, the court instructs you to find the defendant not guilty."

At the close of the plaintiff's evidence appellant's counsel asked the court to instruct the jury to find a verdict of not guilty, which request was denied, and on being renewed at the close of all the evidence, was again denied.

JOHN A. ROSE and LOUIS BOISOT, attorneys for appellant; W. W. GURLEY, of counsel.

MOSES, ROSENTHAL & KENNEDY, attorneys for appellee.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

Appellant claims, but it is not argued, that the evidence is not sufficient to justify the verdict, and that the judgment should be reversed without remanding. From what we shall say under the next contention of appellant, we think it will be clearly apparent that the facts of the case present an issue which should have been determined by a jury.

Next, the claim is made that the judgment is contrary to the preponderance of the evidence. In this regard it is argued that because the plaintiff's case, as to the circumstances of the accident, depends upon her evidence alone, not being corroborated by a single witness, and is contradicted by two witnesses for the appellant, whose testimony is consistent with itself and diametrically opposed to her evidence, the verdict can not stand, and therefore the judgment must be reversed as contrary to the weight of the evidence. Numerous cases of the Supreme Court, decided when it had jurisdiction to determine questions of fact in cases at law, and of the Appellate Courts since their organization, are cited, to the effect, in substance, that a verdict for the plaintiff, when resting only upon the testimony of the plaintiff, when that is contradicted not only by the defendant, but also by another witness or by the defendant's employe and one or more witnesses, and there are no ele-

ments of probability to turn the scale, such a verdict will be reversed as contrary to or against the weight of the evidence. Among others the following cases are cited which support the proposition as stated, viz.: Koester v. Esslinger, 44 Ill. 476; Peaslee v. Glass, 61 Ill. 94; Belden v. Innis, 84 Ill. 78; R. R. Co. v. Gill, 37 Ill. App. 61; Bernstein v. Patterson, 33 Ill. App. 152; R. R. Co. v. Mahoney, 79 Ill. App. 53; R. R. Co. v. Byrne, 85 Ill. App. 488–90; Morgan & Wright Co. v. McCutcheon, No. 9462 of this court, not reported.

We have carefully read the evidence of the appellee and of the two witnesses Martin and Rieger, these being the only ones who testified to the circumstances of the accident, both in the abstract and in the record, and are of opinion that the verdict can not be said to be clearly and manifestly against the weight of the evidence. There is no conflict in the evidence as to appellee having been a passenger upon appellant's horse car and that she fell and was injured by the fall. She says that when she "was in the act of getting off they rang the bell and the car began to jerk and I fell to the ground backward. * * * The conductor of the car picked me up. He asked me where I lived. He asked me whether I was hurt, so I answered him, 'I don't know,' and he wrote down my name."

Martin, the conductor, says the plaintiff left the car at its rear end while he was standing on the rear platform, the car standing still; that he did not give the bell to go ahead; that the car had not started when she got off; that he did not see her fall; that she did not fall when she got off the car, but his attention was called by somebody on the sidewalk; that somebody picked her up and he jumped off the car, went to her and asked if she was hurt, and that she said "No," and that she gave him her name.

The witness Rieger, who was a police officer, stationed at the crossing, says that he saw the plaintiff fall in the street; that when she fell the car was standing still; that after she fell the car started eastward, and that he was busy at the time with some wagons that were there. On his cross-

examination he said that he had not seen her before she fell; also that he was in a position where he could observe anybody and everybody that got off there; that she stepped on a foot of a snowbank and slipped down—put her foot on the bank and slipped down on one knee; did not fall over; and again that there were a number of wagons there behind the car which he watched.

It is impossible, without copying the evidence of these two witnesses, to give a full understanding of it, and the different circumstances to which they testify. It must be read in the transcript of the record to be appreciated. It is contradictory in several respects, notably as to whether plaintiff fell from slipping on a snowbank. The conductor says the pavement was muddy and slippery; that it was snowing—had just started to snow; the snow started a few minutes before and there was not much snow on the ground; while the policeman says, "The snow was piled up there, and there might have been a foot of a snowbank there." The conductor says he did not pick up the plaintiff, while the policeman says that he spoke to her and that the conductor had already helped her. The conductor says the plaintiff was crying. That she fell, is not contested. The clear preponderance of the evidence is that she was hurt as the result of the fall, but the conductor testifies that when he asked her whether she was hurt she said "No." The policeman does not say that she was crying, but that he went to her and asked her if she was hurt and "she said one of her legs, her knee, I think, hurt her." If plaintiff fell when she had walked almost the length of the car after she left it, as testified to by the conductor, it seems remarkable that the conductor should have been so solicitous about plaintiff's being hurt that he would offer to take her to a drug store when there were ladies there present, as is shown by his evidence. His solicitude in that regard is consistent with apprehension on his part that he might possibly be blamed. And if so, what could the blame have been but for starting the car as plaintiff says was done? The jury and the trial court saw and heard these witnesses,

as well as the plaintiff, testify, could observe their demeanor and appearance upon the stand, and were therefore in a much better position to determine their credibility than are we by reading the evidence as it appears in the record. The driver of the street car was not called as a witness. This, so far as we can find in the record, is not explained and is not without significance. We do not feel justified in disturbing the verdict as being against the weight of the evidence.

Complaint is made that the court struck out the evidence of the conductor that he did not make any report to the company at the time of the plaintiff's having fallen. If there was any error in this regard, and we are inclined to think there was not, we do not regard it as sufficient to justify a reversal.

The four instructions quoted in the statement, which were given for appellee, are criticised as being argumentative and erroneous in other respects, especially the second instruction, which, it is claimed, tells the jury to disregard the number of witnesses in determining the preponderance of the evidence, and that the third instruction was not justified, because there was nothing in the evidence to show what the plaintiff or any one else testified to on a former hearing.

We do not regard these instructions so far argumentative as to make them erroneous, especially in view of the very full and favorable instructions given on behalf of appellant, eighteen in number, some of which are not free from criticism in a like respect.

We do not regard the second instruction as being open to the criticism that it tells the jury to disregard the number of witnesses in determining the point as to the preponderance of the evidence. It does not exclude from the consideration of the jury that element, but impliedly concedes that this is a proper matter for their consideration. Similar instructions have been held not to be erroneous. Meyer v. Mead, 83 Ill. 19; R. R. Co. v. Fisher, 141 Ill. 614–26.

Moreover, if there could be said to be a fault in this instruction in this respect, it is fully, as we think, obviated by instruction 18, given for appellant, on the same subject.

The criticism above noted as to the third instruction, while sustained by the record, in our opinion is no cause for a reversal. It was rather calculated to prejudice the plaintiff than the defendant, as it by implication states that her testimony on a former trial was different from what it was on this trial, when that, as a matter of fact, does not appear from the record. The other criticisms made of these instructions, as we think, need no special mention, since they do not present any reversible error, nor are they of special importance.

Appellant's instruction No. 27, refused, was, in our opinion, fully covered by instructions 7 and 8 given for appellant; and even if it is not, we think that they, considered in connection with instructions 9, 11 and 12, which were given for appellant, fully instruct the jury upon the point of the refused instruction.

We think appellant's refused instruction No. 28, should not have been given. Besides being subject to criticism as argumentative, it impliedly requires the plaintiff to prove all the allegations in her declaration before she could recover. There are allegations in the declaration without the proof of which there might be a recovery. Batchelor v. Union S. Y. & T. Co., 88 Ill. App. 395–400.

The essential part of the instruction, in so far as it is free from argument, is fully covered by instruction 20 given for appellant.

Lastly, it is said that the damages are excessive, but to this we can not yield our assent. As we have said, we think the clear preponderance of the evidence is that the plaintiff was injured quite seriously as the result of her fall. She remained in bed six or seven months. Prior to her injury her health was good, but since then and up to the time of the trial, which was almost eight years after the injury, her health was poor. The expert evidence on both sides agrees as to that fact. Dr. Moyer, a physician of

wide experience in mental and nervous diseases, says that in 1897, when he first examined her " she was nervous and hysterical; emotional; she cried easily; she was shaky and nervous; " and upon a hypothetical question embodying the essential parts of the evidence bearing upon her injury and the previous condition of her health,. said, on being asked, " that he would attribute her poor health to the accident." Dr. Greenspahn, who treated her for the injury from about its date for six or seven months following,' testified fully as to her condition immediately following the accident. He says : " My diagnosis was acute neurasthenia, or, to use a more popular expression, nervous prostration;" and that her " symptoms would certainly be traceable to the fall."

The expert evidence on behalf of the appellant, while in the main agreeing with that of the appellee, is, in substance, that her condition was not due to the injury. The whole evidence considered, we think the jury was justified in finding in accordance with the opinions of Doctors Moyer and Greenspahn, and that the amount of the verdict is sustained by the evidence.

Other minor matters presented in the arguments of counsel need no special mention in view of the conclusions reached. The judgment of the Superior Court is affirmed.